# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**                                                                                       AUGUST 21, 2017
PELTON@PELTONGRAHAM.COM

<u>VIA ECF</u>

Honorable James L. Cott
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Caceres, et al v. Pan Brothers Associates, Inc., et al*
            <u>Civil Action No. 17-cv-01496 (JLC)</u>

Dear Judge Cott:

      We represent Named Plaintiffs Wilson Caceres, Luis Barbecho and Cesar Barbecho (the "Named Plaintiffs") and Opt-in Plaintiffs Cristian Andrade, Javier Merchan, Julio Cesar Moran, Luis Alfredo Gordillo, Robert Arichavala, Victor Naula and Luis Saula (the "Opt-in Plaintiffs" and, collectively with the Named Plaintiffs, the "Plaintiffs") in the above-referenced matter against Pan Brothers Associates, Inc., Tri-State Building Corp. (together, "Pan Brothers" or the "Corporate Defendants"), Peter Pantelidis, George Pantelidis and James Pantelidis (collectively, the "Individual Defendants" and, together with the Corporate Defendants, the "Defendants"). This letter is submitted jointly with Defendants' counsel pursuant to the Fair Labor Standards Act (FLSA), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), and Your Honor's July 21, 2017 Order (Dkt. No. 38). The Parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**      **Introduction**

      Plaintiffs are former demolition workers, construction workers, bricklayers, carpenters, painters, electricians, plumbers and general laborers who allegedly worked for Defendants' general construction and real estate company.[1] The Named Plaintiffs commenced this Action by filing a Class and Collective Action Complaint (Dkt. No. 1, the "Complaint") on behalf of themselves and all similarly situated employees of Defendants on February 28, 2017, seeking unpaid overtime premiums pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL") § 650 *et seq.*, as well as damages for wage notice and wage

---

[1] The parties dispute whether any Defendants employed Plaintiffs within the meaning of the FLSA or the NYLL.

statement violations pursuant to the NYLL. Defendants filed their Answer on April 28, 2017, denying all material allegations and asserting various defenses. (*See* Dkt. No. 28).

The Court referred this matter to mediation on May 1, 2017. (Dkt. No. 29). On May 25, 2017, Plaintiffs Andrade, Merchan, Moran and Gordillo opted into the case. (Dkt. Nos. 31-34). Plaintiffs Arichavala, Naula and Saula opted into the case on August 16, 2017.[2] (Dkt. Nos. 39-41). In advance of the mediation, Defendants produced a sampling of redacted accounting records, along with a spreadsheet prepared by defense counsel compiling certain data regarding hours allegedly worked by, and amounts allegedly paid to, the Named Plaintiffs and Opt-in Plaintiffs Andrade, Merchan, Moran and Gordillo. Because it is Plaintiffs' position that Defendants did not provide a reliable system to keep track of the hours that they worked on a specific job site during the day, Plaintiffs prepared a damages analysis for Plaintiffs Caceres, Luis Barbecho, Cesar Barbecho, Gordillo, Andrade, Merchan and Moran in advance of the mediation based on Plaintiffs' best estimates of the hours that they worked and the wages they were paid.

On June 14, 2017, the parties participated in a full-day mediation with Stephen Sonnenberg, Esq. of the Southern District of New York mediation program. At the conclusion of the mediation, the parties agreed to the preliminary terms of a resolution on behalf of the Named and Opt-in Plaintiffs and subsequently worked together to finalize the attached settlement agreement.[3]

## II. The Settlement Accounts for Litigation Risk and Compensates Plaintiffs for Substantial Alleged Damages

Throughout this Action, the parties have had several major points of contention on key legal and factual issues. Namely, the parties dispute: (1) the number of hours that Plaintiffs worked; (2) the accuracy of Defendants' records; and (3) whether any Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

It is Plaintiffs' position that although they worked ten to eleven (10-11) hours per day, six (6) and sometimes seven (7) days per week, for a total of at least sixty (60) hours per week, Defendants paid them a day rate of between one hundred dollars ($100.00) and one hundred and fifty dollars ($150.00), which was supposed to compensate them for an eight (8)-hour work day. Defendants denied these allegations and disputed Plaintiffs' assertions that they were not properly paid. Specifically, Defendants denied that Plaintiffs worked the number of hours that they alleged and that they were paid for only eight (8) hours per day. Defendants produced time and pay records

---

[2] Although these three Opt-in Plaintiffs had not officially joined the action at the time of the mediation, they had signed retainers with Plaintiffs' counsel and were therefore included in the settlement discussions that took place at the mediation.

[3] The parties also currently are in the process of negotiating a separate private agreement covering non-wage and hour claims. The separate agreement is not contingent on the settlement of the FLSA and NYLL claims and it will not contain any clause or language that would prevent Plaintiffs from discussing the settlement of the wage claims in this matter. The process of parties to an FLSA matter separately agreeing to a private confidential agreement addressing non-FLSA claims, not subject to judicial review, has been expressly approved by several courts post- *Cheeks*. *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. Apr. 28, 2017) ("such a bifurcated settlement agreement is permissible" under *Cheeks*).

showing payment to Plaintiffs for weekly hours that were for fewer hours than Plaintiffs had alleged and payment to the Plaintiffs for hours not in denominations of eight (8), indicating that Plaintiffs were paid for hours beyond eight (8) in a single day. Furthermore, it is Defendants' position that Plaintiffs typically worked a maximum of eight (8) hours per day, and therefore, could not have worked nearly as many hours as Plaintiffs allege. While Plaintiffs would dispute the accuracy of Defendants' records at trial, Plaintiffs recognize that such documents could potentially limit the amount of damages Plaintiffs could recover at trial if a factfinder credited Defendants' materials.

Due to the fact-intensive nature of Plaintiffs' claims, substantive answers to these disputed issues would not be resolved until after formal discovery, motion practices including collective and class motions, as well as summary judgment, and likely a trial. While the parties have engaged in certain informal discovery, continued litigation would necessitate additional written discovery including interrogatories as well as numerous depositions. Plaintiffs would seek dispositive motions on certain of the disputed legal issues discussed above and Defendants would oppose any such motions.

As stated above, Plaintiffs' counsel created an initial damages analysis, based on Plaintiffs' best estimates of hours worked and wages paid. Plaintiffs' analysis, which formed the basis for Plaintiffs' position at the mediation, calculated approximately $382,000.00 in alleged "actual" unpaid overtime wages. This allocation, notably, did not include Plaintiffs Naula, Arichavala and Saula. Plaintiffs subsequently prepared a revised analysis for purposes of preparing their allocation, which included these individuals. With the addition of Naula, Arichavala and Saula, Plaintiffs' alleged total unpaid overtime damages amount to approximately $430,000.00.[5]

Given the above, the settlement amount ($490,000.00) is in excess of the alleged unpaid wages to which Plaintiffs assert they are entitled, as calculated in Plaintiffs' damages analysis, which would be the anticipated recovery if Plaintiffs received a favorable outcome at trial for their unpaid overtime claims under the FLSA and NYLL. The Parties believe that this is a fair recovery based on the risks associated with establishing the calculated damages and the risks attendant with proceeding to a trial.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $490,000.00 (the "Settlement Amount"). Of that amount, $163,859.22 is payable to Plaintiffs' counsel, representing $789.06 in expenses for counsel's costs for filing and service of the complaint and attending the mediation, plus one-third of the Settlement Amount after subtracting those expenses. The remaining $326,140.78 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release for any claims arising before the Named and Opt-in Plaintiffs signed the

---

[5] With the addition of damages for Plaintiffs' wage notice and wage statement claims, as well as liquidated damages and interest, the total damages and penalties for all claims equaled to approximately $1,600,000.00.

Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 . . . without adequate documentation to support such a fee award." The Settlement Agreement before Your Honor, however, (1) does not contain a restrictive confidentiality provision; (2) does not contain a release which is one-sided or is to be applied to future claims; and (3) the Plaintiffs' attorneys' fees are standard (i.e., 1/3). Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to Your Honor to explore and to assess whether it was likely the "fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel." *Lola v. Skadden,* No. 13-cv-5008, 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

### IV.     Plaintiffs' Attorney's Fees and Expenses[6]

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit B), as of August 21, 2017, Plaintiffs' counsel has spent more than 190 hours in prosecuting and settling this matter, resulting in a lodestar of $57,717.00. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $163,859.22) represents one-third (1/3) of the Settlement Amount, after subtracting the actual litigation costs, which is approximately 2.8 times the lodestar amount, which Courts routinely find to be within the reasonable range awarded in complex multi-plaintiff wage and hour litigation. *See, e.g., Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014) (Approving a multiplier of 2.28 and concluding that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases."); *Kemp-Delisser v. St. Francis Hosp. & Med. Ctr.*, 2016 U.S. Dist. LEXIS 152496, *51 (Ct. Dist. Ct. 2016) (approving a multiplier of 2.77 as "well within the range of lodestar multipliers that are regularly approved by district courts in the Second Circuit"); *see also Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *21 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 n. 5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"). In addition, this amount is consistent with what was agreed upon between Plaintiffs and their counsel in their retainer agreements and the consent to become party plaintiff forms filed with the Court. The retainer agreement between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.[7]

---

[6] While Defendants' counsel joins in the request for approval of the settlement on behalf of Defendants, Defendants' counsel takes no position as to Plaintiffs' counsel's request for approval of fees from the settlement.

[7] The Opt-in Plaintiffs did not sign a retainer agreement, but their Consent to Become a Party Plaintiff contains a similar provision regarding Pelton Graham's intention to seek one-third of the overall recovery as attorneys' fees.

V.		**The Court Should Find That the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116 (internal quotations omitted). Courts typically presume that a settlement "meets the requirements of due process" where the agreement was reached after "arm's-length negotiations involving counsel and a mediator." *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *9 (E.D.N.Y. Feb. 18, 2011); *Massiah v. Metroplus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 U.S. Dist. LEXIS 166383, at *14 (E.D.N.Y. Nov. 20, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement"). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 U.S. Dist. LEXIS 20786, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13 Civ. 6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations and with the assistance of an experienced employment mediator. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial portion of possible recovery under the FLSA, and the total Settlement Amount is more than Plaintiffs' actual unpaid overtime wages.

Further, the negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery at trial would be less than the negotiated settlement amount. The litigation risks faced by Plaintiffs which render the negotiated settlement a fair and reasonable one include but are not limited to: 1) the risk that Defendants would prevail on a dispositive motion; 2) the risk that the factfinder would determine based on the records produced by Defendants that the Plaintiffs were properly compensated for all regular and/or overtime hours that they worked; 3) the risk that even if Plaintiffs established that they were not paid overtime premiums, the hours that they proved they worked in excess of 40 per week would be minimal; and 4) the risk that the factfinder would determine that Plaintiffs received all wage statements and notices and that such were accurate and proper.

Given these risks, settlement at this stage unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. *Lundy v. Catholic*

*Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

Finally, it cannot be disputed that the Agreement was the product of negotiations which were devoid of any semblance of fraud or collusion. Indeed, negotiations between the Parties were contentious, such that a lengthy mediation was required to bridge the gap between their positions.

\* \* \* \* \*

In sum, it is apparent that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the parties. This is because the Agreement: (1) fairly accounts for Plaintiffs' possible recovery and Defendants' ability to mitigate or eliminate same; (2) enables the parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (3) is the product of arm's-length bargaining between experienced counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

**PELTON GRAHAM LLC**

By: */s/ Taylor B. Graham*
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

*Attorneys for Plaintiffs*

cc: Jonathan M. Kozak (via ECF)
Isaac J. Burker (via ECF)
*Attorneys for Defendants*